IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WALTER BLANCK,

                Plaintiff,

v.

MICHAEL BAENEN, PAUL SUMNICHT,
KATHY LEMENS, WAYNE LAUFENBERG,
VALERIE BEVERLY, DANIEL MCDONALD,
and JOSEPH VERDEGAN,[1]

                Defendants.

OPINION & ORDER

13-cv-193-jdp

---

Plaintiff Walter Blanck is a prisoner incarcerated at the Green Bay Correctional Institution. In this consolidated lawsuit,[2] he brings claims that prison officials failed to properly treat his spine curvature and arthritis that required medication and hot baths, at least in part because they meant to retaliate against him for his long history of filing inmate grievances. He also alleges that a correctional officer intentionally allowed a violent inmate to attack him. Defendants have filed a motion for summary judgment.

I will deny summary judgment on Blanck's claim that defendant Sumnicht denied him hot baths to ease his arthritis pain. But I will grant the rest of defendants' summary judgment motion. Blanck fails to provide facts that could lead a reasonable jury to infer that any of the other defendants violated his Eighth Amendment rights with regard to his medical care, or that

---

[1] I have amended the caption to reflect the proper spelling of defendants' names and include their first names.

[2] This lawsuit involved claims consolidated from two separate cases, 13-cv-193-jdp and 14-cv-135-jdp. After recruited counsel agreed to represent Blanck in both cases, I formally consolidated the cases. The amended complaint in the '193 case incorporates the claims from the '135 case, so I will dismiss the '135 case.

any of the defendants retaliated against him for his grievance history. I also conclude that Blanck's failure-to-protect claim against the officer who allegedly allowed Blanck to be attacked must be dismissed because it is barred by the applicable statute of limitations.

ALLEGATIONS OF FACT

Plaintiff Walter Blanck is an inmate at the Green Bay Correctional Institution (GBCI). Defendants all worked at GBCI for at least part of the time during the events discussed in this case. Defendant Paul Sumnicht is a physician. Defendant Kathy Lemens is a registered nurse. Defendants Wayne Laufenberg and Valerie Beverly were sergeants. Defendants Daniel McDonald and Joseph Verdegan were "Correctional Officers II." Michael Baenen was the warden.

Blanck suffers from a variety of medical conditions, including high blood pressure, abnormal heart beat, elevated cholesterol, and back and joint pain caused by abnormal curvature of the back and arthritis.

On July 5, 2005, Blanck was assaulted by an inmate nicknamed "Psycho" Coleman. Blanck sustained injuries, including facial bruises and cuts and a fractured nose requiring surgery. Blanck alleges that defendant Verdegan knew that Coleman was a violent inmate, that Blanck was known in the prison as an informant, and that Verdegan provoked Coleman to attack Blanck, allowed Coleman access to Blanck, and allowed Coleman to attack Blanck.

Between May 2009 and November 2015, Blanck filed 202 inmate grievances on a wide range of issues. Grievances are kept confidential to a certain extent, but because complaint examiners often consult with prison officials about the disputes that are the subject of the

grievances, prison officials often gain knowledge about grievances. Blanck was known by officials to complain often about his conditions of confinement and treatment in prison.

At some point during his time at GBCI, Blanck was allowed to take hot baths to ease his arthritis pain from his curved spine. Blanck filed two grievances in January 2010 about defendant Verdegan denying him a pass to use the baths, but both grievances were dismissed after it was discovered that Blanck's name was not on the "pass list" at that time.

The parties dispute whether the baths were merely a substitute for showers that he could not reach without using stairs, or a necessary medical treatment for his pain. A doctor at GBCI discontinued the baths in June 2010. When defendant Dr. Sumnicht arrived at GBCI in 2012, he treated Blanck for his various medical conditions, including arthritis. Sumnicht did not re-order the baths for Blanck, instead focusing on treatment with medication, including methadone. Sumnicht believes that Blanck could function without the baths, Blanck did not need to avoid climbing stairs, and he thought that Blanck might be malingering. Blanck's expert, Dr. Paul A. Searles, DO, states that the lack of hot baths likely made Blanck's arthritis pain worse, and that the baths are "reasonable and necessary for his problems." Dkt. 135-2, at 3.

ANALYSIS

To succeed on their motion for summary judgment, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on the merits. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummet v. Sinclair Broad. Grp., Inc.*, 414 F.3d

3

686, 692 (7th Cir. 2005). All reasonable inferences supported from the facts in the summary judgment record must be drawn in Blanck's favor as the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If Blanck fails to establish the existence of an essential element on which he will bear the burden of proof at trial, summary judgment for defendants is proper. *See Celotex*, 477 U.S. at 322.

**A. Medical care**

Blanck brings claims that defendants violated his Eighth Amendment rights by failing to give him appropriate treatments for his various maladies. More specifically, he organizes his claims as follows:

- Defendant Dr. Sumnicht refused to provide "these treatments," claiming that Blanck did not meet the criteria for them

- Defendant Nurse Lemens, "refused to provide the above treatments and medical evaluations"

- Defendant Lemens directed defendant Supervisor Beverly to intercept Blanck's medications before they could be delivered to him

- Defendant Correctional Officers McDonald and Verdegan "engaged in various acts to deprive [Blanck] of said treatments"

Dkt. 113, at 3. Blanck's use of the vague term "treatments" is not well fleshed out in any of his submissions in this case, but the only developed arguments he raises are regarding the medications for his various maladies, and the hot baths for his arthritis. The only medical condition Blanck mentions in his amended complaint is his arthritis. But I take his claims regarding medication to encompass other medical problems, and both sides have proceeded as if this is the case. So I will consider his medication claims to include all of his prescribed medications.

4

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

The main focus of Blanck's claim regarding the deprivation of hot baths is defendant Dr. Sumnicht's refusal to reinstate them. Many of defendants' proposed findings of fact about Sumnicht's treatment decisions rely on Sumnicht's interpretation of Blanck's medical records and other statements made in his declaration. Blanck disputes or objects to many of these findings because defendants did not include Sumnicht's declaration with their summary judgment materials-in-chief. In addition, defendants did not disclose Sumnicht as an expert, even though he opines about the appropriateness of his decision not to provide Blanck with

hot baths. Defendants included Sumnicht's declaration with their reply, but the damage has been done—we do not have full substantive responses to many of the proposed findings.

I could not consider granting summary judgment to defendants without allowing Blanck a sur-reply to more directly respond to Sumnicht's testimony. But I am doubtful that the sur-reply would actually result in resolution of the claim, seeing as Blanck's expert Searles thinks that the baths were necessary. Defendants argue that all Searles's testimony does is show a disagreement between doctors, which is not enough to violate the Eighth Amendment. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But I am not willing to make that conclusion given defendants' own failure to properly present Sumnicht's opinions for Searles to grapple with at summary judgment. At this point it appears that this claim will be resolved in a contest of experts, so there is no need to ask the parties to supplement their summary judgment briefing, particularly given the short time before trial, and the already lengthy time it has taken to resolve this case. Accordingly, I will deny defendants' motion for summary judgment on this claim.

But this claim against Sumnicht is the only medical-care claim that survives summary judgment. Defendants' arguments concerning the rest of Blanck's claims do not hinge on Sumnicht's testimony. There are no genuine issues of material fact on the other claims, in large part because Blanck fails to develop evidentiary support for many of his claims, or even provide enough information to be able to ascertain what discrete individual events he believes form the basis for his claims. For instance, Blanck's complaint appears to include a claim against defendant Nurse Lemens for interfering with his baths. But Lemens says that she had no role in determining whether an inmate could use the tub, and Blanck provides no evidence suggesting that she interfered with baths at any point.

The parties more explicitly disagree about the evidentiary support for Blanck's claim that Lemens interfered with the provision of his medication, including at least one incident in which she ordered defendant Beverly to intercept his medication before he could receive it. In their proposed findings of fact, defendants state that defendant Lemens never prevented Blanck from taking his medications and she never instructed anyone else to take his medications away or intercept them before Blanck could receive them. Blanck responds by stating that the deposition testimony defendants cite for these statements does not say exactly that; rather, Lemens says that she could not *recall* ever doing those things. Defendants reply that Lemens went on to say that the only way that medications would be taken away would be if they were discontinued by the doctor, which comes very close to saying that she would never have inappropriately taken medication away from a prisoner.

The parties' dispute here ultimately doesn't matter, because Lemens's testimony itself does not raise a reasonable inference that she indeed took Blanck's medication or told someone else to do so. The point defendants are trying to make is that there is no evidence that Lemens interfered with Blanck's medications. That's all defendants have to do in their initial briefing. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (citing *Celotex*, 477 U.S. 317). They do not have to provide evidence completely negating Blanck's claim.

It then becomes Blanck's burden to present evidence from which a reasonable jury could infer that Lemens did in fact interfere with Blanck's medication. Blanck fails to meet this burden. His proposed finding that he "was deprived of his medication by the defendants" is supported only by Blanck's expert, Paul A. Searles, DO, who conclusorily states that Blanck "may have been deprived of his medication." Dkt. 135-2, at 3. This is nowhere close to enough to create a genuine dispute of material fact. Searles does not explain who deprived Blanck of

7

medication or when that occurred. He does not explain how he knows that any deprivation happened, which makes sense because he clearly does not have firsthand knowledge of any of these events. The Court of Appeals has often called summary judgment the "'put up or shut up' moment in litigation," *see, e.g.*, *Goodman v. National Security Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010), and here, Blanck has failed at this crucial juncture. Without any evidence that could lead a reasonable jury to conclude that Lemens, or by extension, Beverly, interfered with his medications, I must grant summary judgment to defendants on these claims. The same goes for medication-related claims against the other defendants.

Blanck also vaguely alleges that defendants McDonald and Verdegan interfered with his "treatments." This set of claims runs into the same problem as the medication claims. Defendants say that McDonald and Verdegan were not actually aware of Blanck's medical needs, which Blanck disputes by explaining how officers may have learned about an inmate's medical conditions if that inmate filed grievances about it. But mere knowledge of Blanck's medical conditions is not enough. Blanck needs to submit evidence showing that McDonald and Verdegan actually interfered with his medical treatment in some way.

The only proposed findings touching on that issue are those produced by defendants: they recount grievances in which Blanck complained that Verdegan twice refused to give him a pass to use the HSU tub. But both times, the complaint examiner's investigation showed that Blanck's name was not on the pass list for that day. Blanck does not dispute those facts. So all they show is that Verdegan appropriately followed the pass list; there is no reasonable inference to be drawn that he acted with deliberate indifference towards Blanck's medical needs. I will grant defendants' motion for summary judgment on this set of claims.

## B. Retaliation

Blanck alleges that each of the named defendants violated his rights in retaliation for Blanck exercising his First Amendment rights by filing grievances about his conditions of confinement or officer misconduct at the prison. To prove a retaliation claim under the First Amendment, a plaintiff must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by the defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendant took the action he did against him. *Bridges v. Gilbert,* 557 F.3d 541, 556 (7th Cir. 2009).

It is well settled that inmates have a First Amendment right to file grievances, and I do not take defendants to be disputing that the types of alleged deprivations here are serious enough to dissuade a person of ordinary firmness from filing grievances in the future. But Blanck's retaliation claims fail on the third element: the facts in the record do not raise a plausible inference that defendants acted the way they did because of the grievances.

In his amended complaint, Blanck alleges that defendants' alleged retaliatory actions occurred "shortly after each [sic] the filing of the plaintiff's grievances," Dkt. 113, at 4. Defendants contend on summary judgment that they cannot reasonably rebut Blanck's allegations because he does not explain the timing of specific alleged retaliatory events in relation to specific grievances. Blanck responds in part by saying, "'[I]t is easy to *state* a retaliation claim.'" Dkt. 132, at 15 (quoting *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)) (emphasis added by the court). That misses the point that at the summary judgment stage, Blanck has to provide evidence *proving* his claim.

Usually, that is done in part by the parties explicitly detailing the timing of events. I say "in part" because suspicious timing by itself can only rarely provide enough support to prevail on a retaliation claim. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 673 (7th Cir. 2009). Given the staggering number of grievances Blanck filed over the several years at the heart of these events, and his failure to explain in more detail in his complaint exactly when each alleged retaliatory event occurred, I cannot expect defendants to prove they *didn't* retaliate by exhaustively picking apart the timing of events. Blanck has the burden to establish this element of his case, and he does not provide a timeline of events tying particular grievances to defendants' actions.

Instead, Blanck argues that the sheer number of grievances he filed led him to be considered a nuisance by prison staff. Although defendants attempt to argue that Blanck cannot prove that defendants actually knew about his grievance history, Blanck has set forth enough evidence to raise a reasonable inference that prison staff knew who the frequent filers were, and oftentimes they knew when an inmate filed a grievance against them, because the institution complaint examiners would contact them in the course of resolving a grievance.

But even assuming that defendants knew about Blanck's grievance history and considered him a nuisance, that still isn't enough for a reasonable jury to conclude that any of the defendants acted with retaliatory intent. Any prison—or almost any other location where people are forced to interact with each other, for that matter—can create situations where one person might think of another as a nuisance. But that doesn't mean that any action the first person takes toward the second is motivated by retaliatory animus. Something more is needed to show why a particular interaction is fueled in part by a retaliatory motive. Otherwise Blanck could bring a retaliation lawsuit literally anytime a prison staff member does something he does

not like. Given the facts that the parties have submitted at summary judgment, Blanck can only speculate that defendants intended to retaliate against him. That is not enough for a reasonable jury to find in his favor on his retaliation claims, so I will grant defendants' motion for summary judgment on this set of claims.

**C. Failure to protect**

Blanck brings an Eighth Amendment claim against defendant Verdegan for failing to protect him from an attack by an inmate nicknamed "Psycho" Coleman. This attack occurred in 2005, and defendants argue that this claim is barred by the six-year statute of limitations applying to this type of claim. *See* Wis. Stat. § 893.53 (six-year limit for "Action for injury to character or other rights"); *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (federal courts generally apply Wisconsin's six-year limitations period to § 1983 claims). Blanck filed his complaint containing this claim against Verdegan in 2013, so on the face of it, the claim is too late. Blanck contends that the "continuing violation doctrine" served to delay accrual of his claim because the failure to protect was only one of many retaliatory actions by prison officials that continued to at least 2016. *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001).

There are two problems with Blanck's contention. First, Blanck does not explain how Verdegan's failure to protect Blanck in 2005 ties into a cohesive pattern of retaliation such that each act could truly be considered part of the same continuing violation. The extremely long grievance history discussed by the parties begins in 2009, after the 2005 attack.

But even if Blanck did show a connection among the events, including Verdegan's, I have already concluded above that Blanck fails to raise a reasonable inference that any of the defendants acted the way they did because of Blanck's history of grievances. That includes

Verdegan's rationale for his actions concerning the assault by Coleman. Blanck submits no proposed findings of fact explaining why Verdegan was motivated by retaliatory animus, other than that it was likely that Verdegan was aware that Blanck filed many grievances. Because Blanck cannot tie Verdegan's actions to a pattern of retaliatory conduct by prison officials, the continuing violation doctrine does not apply, and I must dismiss the failure-to-protect claim as barred by the statute of limitations.

## D. Pretrial-submission deadlines

Defendants have filed a motion to stay the pretrial-submission deadlines. I will grant that motion and set new deadlines. The parties may have until July 30, 2018, to submit their Rule 26(a)(3) disclosures, motions in limine, proposed voir dire questions, proposed jury instructions, and proposed verdict forms. The parties may have until August 10, 2018, to file their responses in opposition to those filings. The final pretrial conference will remain on August 15, with the trial on August 20.

ORDER

IT IS ORDERED that:

1. Case no. 14-cv-135-jdp is DISMISSED as duplicative.

2. Defendants' motion for summary judgment, Dkt. 116, is GRANTED IN PART. The case will proceed to trial only on plaintiff Walter Blanck's claim that defendant Paul Sumnicht withheld hot baths as a treatment for his arthritis.

3. All defendants other than Sumnicht are DISMISSED from the case.

4. Defendants' motion to stay pretrial-submission deadlines, Dkt. 140, is GRANTED. New deadlines are set in the opinion above.

Entered July 20, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge